**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. 3512 FOR 2703(d) ORDER FOR ONE FACEBOOK PROFILE SERVICED BY FACEBOOK, INC. | ML No. _____19-ML-1129_____ |

*Reference:*   *DOJ Ref. # CRM-182-68465; Subject Account: 100001044023976*

**APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)**

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a), and the Council of Europe, Convention on Cybercrime, *opened for signature* Nov. 23, 2001, T.I.A.S. 13174, C.E.T.S. 185 (entered into force for the United States Jan. 1, 2007) (hereinafter, the "Convention"), to execute a request from the Republic of Slovenia ("Slovenia"). The proposed Order would require Facebook, Inc. ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Menlo Park, California, to disclose certain records and other information pertaining to the PROVIDER account associated with 100001044023976, as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

**LEGAL BACKGROUND AND JURISDICTION**

1. PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require

PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. 18 U.S.C. § 2703(d). Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512." 18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"); 18 U.S.C. § 3512(c)(3) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

3. Section 3512 provides:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

18 U.S.C. § 3512(a)(1). This application to execute Slovenia's request has been duly authorized by an appropriate official of the Department of Justice, through the Criminal Division, Office of International Affairs,[1] which has authorized execution of the request and has delegated the undersigned to file this application. The undersigned has reviewed the request and has confirmed that it was submitted by authorities in Slovenia in connection with a criminal investigation and/or prosecution.

---

[1] The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

4. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation and prosecution.

## RELEVANT FACTS

5. Authorities in Slovenia are prosecuting Robert Mravljak ("Mravljak") and others for abuse of office, and bribery offenses, and aiding and abetting these offenses, which occurred on and between November 28, 2015 to November 29, 2015, in violation of the criminal law of Slovenia, specifically, Articles 38, 263, and 264 of the Slovenian Penal Code. A copy of the applicable laws is appended to this application. The United States, through the Office of International Affairs, received a request from Slovenia to provide the requested records to assist in the criminal investigation and/or prosecution. Under the Convention, the United States is obligated to render assistance in response to the request.

6. According to authorities in Slovenia, on November 29, 2015, at 1:44 a.m., two police officers conducted a traffic stop of Boris Koprivnikar ("Koprivnikar"), the Minister of Public Administration, who had been driving home after playing in band at a pub in Škofja Loka, Slovenia. According to official police records and an interview with Koprivnikar, the officers administered a breathalyzer test, which revealed that Koprivnikar's blood alcohol level was under the legal limit. Shortly thereafter, the officers released Koprivnikar. Although the officers' subsequent report indicated that they had stopped the minister for driving through a

developed area at 100 km/hour, Koprivnikar denied he was speeding.  The next day, a Slovenian newspaper article reported that the police officers had waited for the minister for several hours in front of the pub before pulling him over, and that police officers had circulated amongst themselves a photograph of the minister's vehicle just hours before the minister was stopped.

7. On March 1, 2016, Slovenian authorities received an anonymous e-mail message with screenshots showing private Facebook messages concerning the Koprivnikar traffic stop. The messages, dated November 28 and 29, 2015, had been shared in a closed Facebook group (hereafter, the "Group") comprised of twenty-four police officers, fifteen of whom actively participated in the discussion.  According to the messages, police officers planned the traffic stop of Koprivnikar, with certain officers promising to provide gifts in the form of weekend spa trips, dinners, and bonuses to the night patrol officers who facilitated the traffic stop.

8. In one example, police officer Dušan Raj ("Raj"), using the Facebook account www.facebook.com/dusan.raj wrote to the Group, "Do this for me and I'll treat you like gods, special bonus, SPS will pay for a weekend spa package."  Raj also promised to reward with dinner the patrol officers who would stop Koprivnikar:  "If they catch him and he fails a breath test, I'll buy the patrol officers dinner.  All the officers buy dinner, inform the patrol, 25 free dinners."  Raj also wrote to the others an imaginary headline, "[Slovenian newspaper]:  'POLICE CATCH THE PUBLIC ADMINISTRATION MINISTER WHILST DRIVING DRUNK' and this comes a day after he made jokes about them on TV."

9. According to authorities, all of the Group's participants were members of the Police Officers Trade Union of Slovenia ("SPS").  The SPS went on strike on November 18, 2015 and Koprivnikar had led negotiations on behalf of the government.  Koprivnikar angered members of the SPS after making statements to the media that police officers were rich and

drove luxury cars. Slovenian authorities believe that members of the group, including Robert Mravljak, (former Secretary General of the SPS) orchestrated the stop of Koprivnikar in the hopes of creating bad publicity for Koprivnikar and a better negotiating position for the SPS.

10.     As part of a pre-trial hearing, a co-defendant submitted an alleged excerpt of a conversation from the Group indicating that Mravljak ceased to be a member of the Group on or before October 8, 2015. Mravljak, who left his position as SPS Secretary General in September 2015, claims that he did not know about the scheme to stop Koprivnikar.

11.     Slovenian authorities previously obtained records from Facebook associated with fifteen of the police officers indicated as members of the Group. A review of these records by Slovenian authorities show that the Facebook profile "Robert Mravljak" with user-ID **100001044023976** was listed on the list of recipients for the messages exchanged by the Group on November 28, 2015 and November 29, 2015.

12.     In order to further the investigation and prosecution of Mravljak, Slovenian authorities now seek certain records for the account **100001044023976**.

13.     PROVIDER services the account 1**00001044023976**.

## REQUEST FOR ORDER

14.     The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation and prosecution. Specifically, these items will help authorities in Slovenia obtain either inculpatory or exculpatory evidence relating to the criminal activity under investigation. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within

ten days of receipt of the Order.

                              Respectfully submitted,

                              VAUGHN A. ARY
                              DIRECTOR
                              OFFICE OF INTERNATIONAL AFFAIRS
                              OK Bar Number 12199

By:    */s/ Jason F. Cunningham*
       Jason F. Cunningham
       Trial Attorney
       MA Bar Number 673495
       Office of International Affairs
       Criminal Division, Department of Justice
       1301 New York Avenue, N.W., Suite 800
       Washington, D.C.  20530
       (202) 616-3596 telephone
       (202) 514-0080 facsimile
       Jason.Cunningham@usdoj.gov

## Relevant Provision of the Slovenian Penal Code

**Article 38 Assistance**
(1) Any person who intentionally assists another person to commit a criminal offence shall be punished as if he himself had committed it, but may however be punished with a lesser sentence.

(2) Assistance to commit a criminal offence shall be deemed to be above all the following; counselling or instructing the perpetrator on how to carry out a criminal offence; providing the perpetrator with instruments to commit a criminal offence or removing obstacles to commit a criminal offence; promises in advance to conceal the perpetrator's criminal offence or any traces thereof or instruments used to commit a criminal offence, or objects or things gained or created by the committed criminal offence or any property benefit achieved by committing a criminal offence

**Article 263 - Accepting Benefits for Illegal Intermediation**
(1) Whoever requires or accepts for himself/herself or for someone else an award, a gift or any other benefit or a promise or an offer of such a benefit, in order to exploit his/her position or his/her true or presumed influence and to intervene to have a certain official activity done or not done, shall be sentenced to imprisonment for up to four years and a monetary fine.

(2) Whoever exploits his/her position or his/her true or presumed influence and intervenes to have an official activity done, which should not have been done or to have an official activity not done, which should have been done or could have been done, shall be punished equally.

(3) If the perpetrator, prior to or after the intervention, accepts an award, gift or any other benefit for himself/herself or for any third person, for the intervention referred to in the preceding paragraph, he/she shall be sentenced to imprisonment of one to six years and a monetary fine.

**Article 264 - Giving of Gifts for Illegal Intermediation**
(1) Whoever, for himself/herself or for any third person, promises, offers or gives an award, a gift or any other benefit to another person, in order (for this person) to use his/her position or his/her true or presumed influence to intervene so that a certain official activity is done or is not done, shall be sentenced to imprisonment of up to four years and a monetary fine.

(2) Whoever promises, offers or gives an award, a gift or any other benefit to another person for himself/herself or any third person, in order (for this person) to use his/her position or his/her true or presumed influence to intervene to have a certain official activity done which should not have been done or to have an official activity not done, which should have been done or could have been done, shall be sentenced to imprisonment of one to six years and a monetary fine.

2

(3) If the perpetrator under the preceding paragraphs gave the award, gift or any other benefit upon a request of the person having exercised intermediation illegally, but reported the activity prior to the activity having been discovered or prior to him/her having found out that the activity had been discovered, then the sentencing can be remitted.